IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC RODRIGUEZ,

           Plaintiff,

     v.

TIMOTHY HAINES, ROBERT HABLE,
KEITH JANTZEN, MARLA WALTERS and
KELLY TRUMM,

           Defendants.

OPINION & ORDER

14-cv-86-jdp

---

In this civil action under 42 U.S.C. § 1983, pro se prisoner Eric Rodriguez is proceeding against several prison officials for violating his procedural due process rights during a hearing to review plaintiff's continued placement in administrative confinement. Plaintiff alleges that a member of the hearing committee was also the reporting officer for two conduct reports that plaintiff had received a year earlier, and so the officer was biased against plaintiff. I granted plaintiff leave to proceed against defendants Timothy Haines, Robert Hable, Keith Jantzen, Marla Walters, and Kelly Trumm with claims under the Fourteenth Amendment for violating plaintiff's right to procedural due process. Dkt. 18.

Defendants have now moved for summary judgment. Dkt. 44. They contend that plaintiff cannot succeed on his due process claims because he did not have a protected liberty interest in avoiding continued administrative confinement. In the alternative, defendants contend that plaintiff received all the process to which he was due in this situation. After reviewing the evidence of record, I conclude that there is no genuine dispute of fact that would require a trial on plaintiff's due process claims. I will therefore grant defendants' motion for summary judgment.

UNDISPUTED FACTS

Based on the affidavits, documentary evidence, and other materials that the parties have submitted at summary judgment, the following facts are undisputed.

Plaintiff is an inmate at the Wisconsin Secure Program Facility (WSPF), located in Boscobel, Wisconsin. He is serving three life sentences for state criminal convictions. Plaintiff has had several periods of confinement at WSPF, but the relevant period in this case is July 2006 to February 2014. Defendants are WSPF personnel who either participated in the decision to retain plaintiff in administrative confinement at WSPF, or who handled plaintiff's grievances about the procedures used during the review hearing.

Beginning in June 2008, plaintiff was confined almost exclusively in a segregated setting, moving between administrative confinement, controlled separation, and disciplinary separation.[1] During the events of this case, plaintiff was in administrative confinement. Under Wisconsin's Administrative Code, inmates in administrative confinement are entitled to status reviews every six months to determine whether their continued placement in administrative confinement is appropriate.

In November 2012, plaintiff came up for a six-month review. As part of this review, defendant Haines, the warden of WSPF, appointed defendant Hable to act as the hearing officer on an administrative confinement review committee (ACRC). In turn, Hable selected defendants Walters and Jantzen to join him as members of the ACRC. Two weeks before the

---

[1] In Wisconsin, "[a]dministrative confinement is an involuntary nonpunitive status for the segregated confinement of an inmate whose continued presence in general population poses a serious threat to life, property, self, staff, or other inmates, or to the security or orderly running of the institution." Wis. Admin. Code DOC § 308.04(1). Controlled separation is a form of temporary confinement for "any inmate in segregated status who exhibits disruptive, destructive, or out of control behavior." *Id.* § 303.74(1). Disciplinary separation is a segregated status imposed as a penalty for major rule violations. *Id.* § 303.73(1).

hearing, plaintiff received a packet of materials that included notice of the hearing, a staff member's written recommendation for plaintiff's continued placement in administrative confinement, a list of every conduct report that plaintiff had received since beginning his incarceration, and copies of the specific conduct reports on which the recommender relied. The list of conduct reports included two that Jantzen had issued plaintiff, both in 2011. These were not among the conduct reports that the recommender discussed in her written recommendation, and the packet did not include copies of the conduct reports.

Plaintiff prepared two written statements after receiving the packet. In the first statement, plaintiff wrote that he had already been punished for the conduct reports mentioned in the written recommendation, and so it was unfair to punish him again with continued administrative confinement. Plaintiff also stated that he had completed programming at WSPF and deserved to return to the general population. In his second statement, plaintiff challenged the ACRC's determination that the written questions that he had prepared for the upcoming hearing were irrelevant.

The ACRC held a review hearing on November 21, 2012. Plaintiff was present, as was a staff advocate. After reviewing the written recommendation, plaintiff's conduct history, the specific conduct reports included in the packet, and plaintiff's written statements, the ACRC unanimously decided to retain plaintiff in administrative confinement. The ACRC concluded that plaintiff's presence in the general population "would jeopardize the safety and security of both staff and inmates." Dkt. 49-2, at 20.

Plaintiff appealed the ACRC's decision to Haines, presenting many of the procedural errors that he had identified in his written statements before the hearing. But plaintiff also suggested that Jantzen's membership on the ACRC was inappropriate because he was biased

3

against plaintiff. According to plaintiff, Jantzen was substantially involved in two conduct reports that at least partially led the ACRC to retain plaintiff in administrative confinement: conduct report numbers 2212338, Dkt. 49-3, and 2242329, Dkt. 49-4.

The 2212338 report concerned an incident that occurred in May 2011. According to the conduct report, Jantzen was escorting inmates back to their cells after recreation, and he had a confrontation with plaintiff. Plaintiff refused to come out of the recreation cell and let Jantzen escort him. After plaintiff disobeyed several direct orders, Jantzen moved on to escort other inmates. A different correctional officer ended up escorting plaintiff, and plaintiff told that officer that he would never let Jantzen escort or touch him because Jantzen was gay. Plaintiff received 30 days of room confinement for disobeying orders.

The 2242329 report concerned an incident that occurred in December 2011. According to the conduct report, Jantzen was escorting inmates from their cells to their work assignments. As Jantzen passed by plaintiff's cell with another inmate, he told plaintiff to get ready for work. But when Jantzen came back to plaintiff's cell, plaintiff refused to go to work; instead, he turned off the light in his cell and got back into bed. Jantzen gave plaintiff a direct order to come out of his cell to go to work, but plaintiff refused. Jantzen notified a sergeant of the situation. Plaintiff received 15 days of room confinement and loss of electronics privileges for refusing to attend work or school.

Haines affirmed the ACRC's decision on December 21, 2012, stating that plaintiff "has a long history of assaultive behavior. Consideration was given to possible release to [general population,] however noting length of sentence, time frame of assaultive history, more monitoring is needed to assure the safety of staff & inmates; also to maintain the security of the institution." Dkt. 49-2, at 17. Haines's decision did not directly address the

4

bias issue that plaintiff had raised. Plaintiff appealed Haines's decision to the administrator for the Department of Adult Institutions, who affirmed the ACRC's decision.

After submitting several grievances through WSPF's inmate complaint system—some of which defendant Trumm handled—plaintiff filed suit in this court under 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment right to due process. Dkt. 1. I screened plaintiff's complaint and denied him leave to proceed with claims arising out of: (1) insufficient notice for the November 21 hearing; (2) inability to call witnesses during the November 21 hearing; (3) the ACRC's failure to address plaintiff's arguments about Haines's official oath and bond; and (4) alleged procedural violations that occurred at a different hearing. Dkt. 18, at 4-8. But I granted plaintiff leave to proceed with procedural due process claims that Janzen should not have served on the ACRC because of bias. *Id.* at 8-9. Defendants have now moved for summary judgment on these claims. Dkt. 44.

## ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). But if the nonmoving party fails to establish the

existence of an essential element on which that party will bear the burden of proof at trial, then summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Plaintiff is proceeding against defendants with procedural due process claims. "There are two steps to any procedural due process analysis. First, the court must identify the protected property or liberty interest at stake. Second, it must determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2719 (2014). With these steps in mind, I conclude that defendants are entitled to judgment as a matter of law. Even assuming that plaintiff had a protected liberty interest at stake during the November 21 hearing, the undisputed facts confirm that plaintiff received the process to which he was due. I will therefore grant defendants' motion for summary judgment. Because this conclusion will dispose of the entire case, I will not address defendants' alternative arguments regarding qualified immunity, defendant Trumm's personal involvement, and the damages that plaintiff can recover.

## A.  Plaintiff's protected liberty interest

To succeed on his procedural due process claims, plaintiff must first establish that defendants' conduct implicated a constitutionally protected interest. In the screening order, I indicated that plaintiff might have difficulty satisfying this element of his claim because his continued placement in administrative confinement was not a *change* in the conditions of his confinement. Dkt. 18, at 5. This is defendants' opening point: they contend that their decision to retain plaintiff in administrative confinement did not change the conditions of his confinement or lengthen his overall sentence. Thus, defendants contend that plaintiff did not have a protected liberty interest at stake during his review hearing on November 21.

6

The Supreme Court has held that state-created liberty interests for prisoners are

> generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Whether a liberty interest exists in avoiding particular conditions of confinement does not turn on "the language of regulations regarding those conditions but [on] the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484).

A year after the Court issued its decision in *Wilkinson*, the Seventh Circuit applied the precedent in *Lagerstrom v. Kingston*, a case in which a Wisconsin inmate challenged his transfer to WSPF from the general population of a less restrictive prison. 463 F.3d 621, 622 (7th Cir. 2006). In *Lagerstrom*, the inmate identified procedural errors in a hearing that led to his transfer to WSPF, alleging that he was denied the right to call witnesses or see copies of written statements from confidential informants who reported that he had possessed marijuana. *Id.* Relying on *Wilkinson*, the district court concluded that the inmate had a protected liberty interest in avoiding an initial transfer to WSPF, but that he had received the process to which he was due. *Id.* at 623. The Seventh Circuit affirmed, but in doing so, the court of appeals stated that "the liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement. That kind of change might not be present if, for example, the inmate was already confined to segregation." *Id.*

Later decisions from the Seventh Circuit have provided similar statements. *See, e.g., Gibson v. Pollard*, 610 F. App'x 571, 573 (7th Cir. 2015) ("Gibson already was in

administrative confinement when he was sent to *disciplinary* segregation for two months, so his *return* to administrative confinement in August 2013 could not have raised additional due-process concerns." (original emphasis)); *Furrow v. Marberry* 412 F. App'x 880, 883 (7th Cir. 2011) ("[T]he liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement, and that degree of change is likely to be absent if the inmate is already confined to segregation." (internal citations and quotation marks omitted)). And district courts from within the circuit have interpreted *Lagerstrom* as requiring a change in confinement conditions before an inmate's liberty interest is implicated. *See, e.g., Moon v. Samuels*, No. 15-cv-00876, 2015 WL 5162520, at *2 (S.D. Ill. Sept. 2, 2015) ("[N]ot every placement decision implicates the due process clause—process is typically required only when an inmate is moved to a new placement that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . . The key word is new: the liberty interest recognized by the Supreme Court is derived from the drastic change in the conditions of confinement, . . . so when there is no change in conditions, no process is due." (internal citations and quotation marks omitted)).

In this case, defendants contend that *Lagerstrom* and the cases that followed it dispose of plaintiff's due process claim. At the time of plaintiff's review hearing on November 21, he had been in segregated confinement for the past four and a half years. Thus, defendants contend that plaintiff did not have a liberty interest at stake because he did not experience any change in the conditions of his confinement, let alone a drastic change.

Defendants' position is understandable given the language of *Lagerstrom* and other cases (and given my discussion in the screening order). But I am not persuaded that either the Supreme Court or the Seventh Circuit has categorically held that inmates have no due

process rights during periodic review hearings to determine whether they will remain in segregated confinement. Indeed, such a rule would be inconsistent with the requirement that an inmate receive such a periodic review. *See Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) ("Of course, administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates.")). Thus, although I will ultimately grant defendants' motion for summary judgment, it will not be on the ground that plaintiff lacked a protected liberty interest in avoiding his continued administrative confinement.

Going back to *Sandin*, the Supreme Court held that the appropriate comparison for purposes of determining whether a "change" in conditions imposes atypical and significant hardships is between the new status and "the ordinary incidents of prison life." 515 U.S. at 484. Temporary administrative confinement is an ordinary incident of prison life, which is why the Seventh Circuit has held that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008); *see also Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir. 2005) ("[I]n every state's prison system, any member of the general prison population is subject, without remedy, to assignment to administrative segregation or protective custody at the sole discretion of prison officials."). But that is not to say that *extended* administrative confinement—over four years in plaintiff's case—is an ordinary incident of prison life.

Indefinite detention in segregated confinement could cause an atypical and significant hardship. *See Wilkinson*, 545 U.S. at 224; *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-

98 (7th Cir. 2009) ("In a number of other cases, we have explained that a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." (original emphasis)). Wisconsin does not limit the maximum time that an inmate can spend in administrative confinement. An ACRC merely reviews the inmate's placement every six months, and higher-level DOC officials begin automatically reviewing retention decisions once an inmate has been in administrative confinement for 12 months or longer. Wis. Admin. Code DOC § 308.04. Because plaintiff is serving three life sentences, this means that he could theoretically remain in administrative confinement for the rest of his life.

I cannot conclude that the Constitution would allow a lifetime of segregated confinement after just one hearing—and with only informal procedural requirements at that. I am also mindful of the Seventh Circuit's recent instruction that "prison officials and judges . . . be alert for the potentially serious adverse consequences of protracted segregation as punishment for misbehavior in prison." *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015). Defendants have not directed me to authority squarely addressing whether an inmate has a protected liberty interest at stake during a periodic review of his administrative confinement status. Thus, I cannot grant their motion for summary judgment on this ground. For purposes of this case, I will assume that plaintiff had a constitutionally protected interest in avoiding continued administrative confinement.

## B.  The process to which plaintiff was due

At the second step of the due process inquiry, I must consider what procedural protections plaintiff was entitled to have during his review hearing. "[T]he requirements of due process are flexible and call for such procedural protections as the particular situation

demands." *Wilkinson*, 545 U.S. at 224 (internal citations and quotation marks omitted). Before transferring an inmate to, or retaining him in, a more restrictive prison setting, prison officials must provide that inmate with informal, nonadversarial due process. *Westefer*, 682 F.3d at 684, 686.[2] This process requires notice of the reasons for the proposed placement and adequate time for the inmate to prepare for a review. *Id.* at 684. The inmate must also have the opportunity to present his views to the official (or officials) who will decide whether to transfer him to segregation. *Id.* But informal due process does not require a "full-blown hearing," the right to call witnesses, a written decision of reasons for the transfer, or even an appeal procedure. *Id.* at 685-86.

Here, plaintiff presents three procedural challenges to his November 21 hearing. First, he contends that he did not receive adequate notice of the hearing because the pre-hearing packet that he received did not include all of the evidence that the ACRC reviewed. But I denied plaintiff leave to proceed with due process claims alleging insufficient notice for the hearing. Dkt. 18, at 6-7. I explained that plaintiff's complaint and attached exhibits affirmatively demonstrated that he was able to understand and respond to the reasons that prison officials gave for recommending that he remain in administrative confinement. *Id.* And even if I had allowed plaintiff to proceed with this claim, the undisputed facts would require me to grant summary judgment for defendants. The recommendation for plaintiff's continued administrative confinement was thorough: it accurately summarized plaintiff's disciplinary

---

[2] Plaintiff asserts that he was entitled to the protections that the Supreme Court identified in *Wolff v. McDonnell*, 418 U.S. 539 (1974). He is incorrect. *Wolff* imposed heightened procedural requirements for prison *disciplinary* hearings. But the decision to retain plaintiff in administrative confinement was not a disciplinary decision, nor did it increase the overall length of his sentence.

history, highlighted several relevant conduct reports, and clearly articulated the reasons for the recommendation. Dkt. 49-2, at 28.

Second, plaintiff contends that he was denied the opportunity to call and question witnesses at the hearing. Again, I denied plaintiff leave to proceed with a due process claim based on this allegation. Dkt. 18, at 7. As explained above, the informal process to which inmates are due during hearings concerning their placement in segregated confinement does not include the right to call witnesses.

Third, plaintiff contends that defendant Jantzen was biased against him and therefore should not have served on the ACRC. This is the claim with which I allowed plaintiff to proceed. *Id.* at 8-9. According to plaintiff, Jantzen was substantially involved in conduct report numbers 2212338 and 2242329, which the ACRC considered when deciding whether to retain plaintiff in administrative confinement. Defendants disagree that Jantzen's involvement in either report precluded him from being a member of the ACRC. They further contend that the conduct reports were not a basis for the ACRC's decision, even though they were listed among plaintiff's 52 other conduct reports. Finally, defendants point out that plaintiff has not alleged any bias on the part of the two other members of the ACRC, the warden of WSPF, or the administrator of the Department of Adult Institutions, all of whom agreed that plaintiff should remain in administrative confinement.

The Due Process Clause entitles inmates to have their prison matters handled by unbiased and impartial officials. For example, "[i]f an officer is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on [a disciplinary] committee." *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (per curiam). But an officer's tangential involvement in the underlying conduct does not

disqualify that officer from sitting on a disciplinary committee that will review the conduct. *Id.* Likewise, an officer who investigates or reports an inmate's conduct is not permanently prevented from serving on a disciplinary committee for that inmate; the officer could serve on a different committee reviewing different conduct. *Piggie v. Cotton*, 342 F.3d 660, 667 (7th Cir. 2003). Thus, it might have been inappropriate for Jantzen to serve on a committee that disciplined plaintiff for conduct that Jantzen had reported. But that is not what occurred in this case.

The ACRC was not directly reviewing the conduct that Jantzen reported, nor was it reassessing plaintiff's guilt or innocence of the rule violations charged in those conduct reports. Instead, the ACRC was considering whether plaintiff met any of the regulatory requirements for administrative confinement. *See* Wis. Admin. Code DOC § 308.04(2). The undisputed evidence of record confirms that the initial recommender did not specifically mention either of Jantzen's conduct reports in her written recommendation, Dkt. 49-2, at 28, the ACRC did not specifically review or discuss the documents related to either report, Dkt. 46, ¶¶ 37, 41, and the written decisions of the ACRC, the warden of WSPF, and the administrator of the Department of Adult Institutions did not specifically mention either report, Dkt. 49-2, at 1, 17, 20.

Plaintiff appears to recognize that Jantzen's mere involvement in prior conduct reports did not disqualify him from serving on the ACRC. *See* Dkt. 59, at 6-7. But plaintiff contends that Jantzen was the *target* of plaintiff's conduct, and so he had a reason to be biased against plaintiff. By way of analogy, plaintiff suggests that a judge who is robbed could not preside over a civil commitment hearing for his assailant. *Id.* at 7. Plaintiff's analogy is ultimately unpersuasive because it does not fit the undisputed facts of this case.

13

In conduct report number 2242329, Jantzen reported that plaintiff failed to follow orders to come out of his cell and that plaintiff refused to attend work. Dkt. 49-4. But the report does not state that plaintiff was verbally or physically hostile toward Jantzen. In fact, the report states that plaintiff refused to speak to Jantzen beyond stating that he was not going to work. *Id.* No reasonable jury could conclude that plaintiff's mere refusal to follow orders targeted or victimized Jantzen.

In conduct report number 2212338, Jantzen reported that plaintiff disobeyed orders to come out of a recreational cell. Dkt. 49-3. Again, there was no physical or verbal altercation, plaintiff simply refused to let Jantzen escort him. Jantzen found another guard to escort plaintiff and overheard plaintiff tell the guard that Jantzen was gay, and so plaintiff would not let Jantzen escort or touch him. *Id.* From this conduct report, a jury could infer that Jantzen was the target of an insulting remark from plaintiff. But there is no reason to think that plaintiff's behavior was anything more than an ordinary occurrence in a prison guard's life, and no reasonable jury could conclude that the remark poisoned Jantzen against plaintiff. Jantzen's affidavit states that although he reported plaintiff's misconduct, that misconduct "did not personally affect or harm [him] in any way." Dkt. 49, ¶ 30. This statement is self-serving, but that does not make it inadmissible. And, most important, plaintiff has not identified evidence that he could use at trial to rebut it.

Plaintiff has not adduced evidence of bias arising from a lengthy and conflict-ridden history with Jantzen. Nor has plaintiff adduced evidence of an especially hostile encounter. Plaintiff has identified only *one* remark, on *one* occasion, and the remark itself was relatively innocuous: there is no evidence in the record that Jantzen was even offended by it. No

14

reasonable jury could conclude that Jantzen developed a bias against plaintiff because of this remark.

The informal process required during a review hearing for an inmate's administrative confinement simply does not include disqualifying every prison official whom plaintiff may have verbally offended in the past. Jantzen's membership on the ACRC is the only procedural deficiency that plaintiff has been allowed to challenge in this case. Because no reasonable jury could conclude that Jantzen's participation deprived plaintiff of the process to which he was constitutionally entitled, I must grant defendants' motion for summary judgment.

ORDER

IT IS ORDERED that:

1.  Defendants Timothy Haines, Robert Hable, Keith Jantzen, Marla Walters, and Kelly Trumm's motion for summary judgment, Dkt. 44, is GRANTED.

2.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered December 18, 2015.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge